**Raymond ROTHBERG, Plaintiff,**

v.

**LOEB, RHOADES & CO., Defendant.**

**No. 76 Civ. 5187.**

United States District Court,
S. D. New York.

Feb. 24, 1978.

---

John J. Phelan, Eliot H. Lumbard, Lumbard & Phelan, New York City, for plaintiff.

Melvin A. Brosterman, Alvin K. Hellerstein, Leonard M. Wasserman, Stroock &

Stroock & Lavan, New York City, for defendant.

PIERCE, District Judge.

## MEMORANDUM OPINION AND ORDER

Defendant Loeb, Rhoades & Co. moves to compel arbitration to resolve a dispute which has arisen between the defendant broker and its customer, the plaintiff herein. Plaintiff cross-moves to stay arbitration pending the determination of a reparation proceeding [1] before the Commodity Futures Trading Commission (CFTC). The principal issue before the Court is whether the parties should litigate their dispute through arbitration or through a reparation proceeding. For reasons that follow, the Court grants plaintiff's motion to stay arbi-

tration pending the reparation proceeding before the CFTC.

## FACTS

In March of 1976, plaintiff and defendant, a CFTC registrant, entered into a customer's agreement which provided that all controversies between the parties be submitted to arbitration.[2] Subsequently, a dispute arose between the parties concerning a deficit in plaintiff's brokerage account, with plaintiff contending that defendant had engaged in a series of fraudulent acts in connection with the account. On August 12, 1976, Loeb, Rhoades mailed to plaintiff notice of intention to arbitrate.[3] On August 17, 1976 plaintiff timely informed defendant in writing that he intended to petition a court of competent jurisdiction to stay arbi-

1. A reparation proceeding is a procedure whereby disputes between a broker registered with the CFTC and a customer may be resolved before the CFTC. See Section 14 of the Commodity Exchange Act, as amended, 7 U.S.C. § 18 (1976) and 17 C.F.R. § 12.1 et seq. (1977). Within two years after a cause of action accrues, a complainant may initiate a reparation proceeding by applying to the CFTC by petition alleging violations of the Commodity Exchange Act by a registrant. 7 U.S.C. § 18(a). After the CFTC determines that there is a valid complaint, it will either forward the complaint to the registrant who is directed to satisfy the complaint or answer it within a specified time period, or it may hold a hearing. 7 U.S.C. § 18(b). The registrant may counterclaim for any claim which "arises out of the transaction or occurrence or series of transactions or occurrences set forth in the complaint." 17 C.F.R. § 12.23(b)(2) (1977). The Commission's order may be appealed to the Court of Appeals for the Circuit in which the hearing was held. 7 U.S.C. § 18(g).

2. The arbitration clause of the Loeb, Rhoades customer agreement provides in pertinent part: "all controversies which may arise between [the parties] . . . shall be determined by arbitration . . . . The [customer] may elect in the first instance whether arbitration shall be by the American Arbitration Association or by the New York Stock Exchange, or other exchange or market facility, but if the [customer] fails to make such election, . . . before the expiration of five days after receipt of a written request from [the broker] to make such election, then [the broker] may make such election. Any arbitration shall be before at least three arbitrators and the award of the arbitrators, or of the majority of them, shall be final, and judg-

ment upon the award rendered may be entered in any court, state or federal, having jurisdiction."

3. The notice of intention to arbitrate stated: "Dear Mr. Rothberg:

"As you know an unresolved dispute presently exists concerning a deficit in your account. The Customer Agreement you signed, a copy of which is enclosed, provides for arbitration of any dispute arising out of or in connection with your account.

"Paragraph 22 of the agreement provides for arbitration in accordance with the rules of the American Arbitration Association, the New York Stock Exchange or any other Exchange, or the National Association of Securities Dealers, Inc. In accordance with the terms of the agreement you have the right to elect the forum before which this dispute will be arbitrated. You must make your election by registered letter or telegram within five (5) days of service of this notice of intention to arbitrate. If you do not make an election within this five (5) day period, then Loeb, Rhoades & Co. will exercise its right to make the election.

"This notice of intention to arbitrate is made on behalf of Loeb, Rhoades & Co. Your election, if made, should be forwarded to my attention c/o Loeb, Rhoades & Co., 42 Wall Street, New York, New York 10005.

"This is a notice of intention to arbitrate within the meaning of Section 7503(c) of the Civil Practice Law and Rules of the State of New York. Unless you apply to stay the arbitration within twenty (20) days after service of this notice, you shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of limitation of time."

tration; that he conditionally elected the American Arbitration Association pending a decision on the petition; and that he did not recognize the conditional election as a waiver of any of his rights under the Commodity Exchange Act of 1974.

Defendant then agreed to extend plaintiff's time to petition to stay arbitration until September 10, 1976. On September 13, 1976, Loeb, Rhoades filed its claim with the American Arbitration Association. On November 3, 1976, plaintiff then applied to the CFTC for a reparation hearing pursuant to Section 14 of the Commodity Exchange Act of 1974, as amended, 7 U.S.C. § 18 (1976). On November 19, 1976, plaintiff brought the present action to stay arbitration pursuant to Rule 65 Fed.R.Civ.P. The arbitration proceeding which had been scheduled to commence on January 31, 1977 was adjourned upon consent of the parties.

## DISCUSSION

 Initially, defendant claims that plaintiff has waived his right to challenge the arbitration clause of the agreement because he failed to apply to stay arbitration within the twenty day period mandated by N.Y. C.P.L.R. § 7503(c). Defendant's reliance on the New York statute is misplaced. Since the question here is whether the Court should direct arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, or reparation under the Commodity Exchange Act, federal, and not state, law controls. See *Prima Paint v. Flood & Conklin,* 388 U.S. 395, 405, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Even though the customer agreement provides that it be governed by New York law, New York courts, in dealing with arbitration disputes where the contract involves interstate commerce, apply federal, and not state, arbitration law. *Hornblower & Weeks-Hemphill Noyes, Inc. v. Csaky,* 427 F.Supp. 814 (S.D.N.Y.1977); see *Shearson Hayden Stone v. Miles,* 54 N.Y.L.J. 7, Oct. 13, 1976 (Sup.Ct., N.Y. County, Oct. 8, 1976). Since there is no comparable timetable such as N.Y. C.P.L.R. § 7503(c) in the Federal Arbitration Act, the Court finds that plaintiff is not barred by virtue of any applicable arbitration law time limits.

 Alternatively, defendant contends that plaintiff is barred under federal law because he failed to file his reparation complaint within 45 days of receiving defendant's notice of intention to arbitrate. 17 C.F.R. § 180.3(b)(3) (1977), promulgated by the CFTC pursuant to the Commodity Exchange Act § 8a, 7 U.S.C. § 12a (1976), provides for a 45-day time period.[4] The subsection further provides that the broker must notify the customer in the notice of intention to arbitrate of his right to seek reparations. The defendant failed to comply with this requirement.[5] Accordingly, the defendant is not entitled to rely on this subsection. Having found the 45-day rule not applicable, the Court determines that plaintiff's petition for reparations is timely in that it complied with the two year statute of limitations prescribed by Section 14 of the Commodity Exchange Act, 7 U.S.C. § 18(a) (1976).

 In addition, the CFTC regulations did not become effective until November 29, 1976, after the commencement of the present action. In order to rely on the

---

4. 17 C.F.R. § 180.3(b)(3) (1977) provides:

"The agreement may not require the customer to waive the right to seek reparations under section 14 of the Act and Part 12 of these regulations. Accordingly, the customer must be advised in writing that he or she may seek reparations under section 14 of the Act by an election made within 45 days after the futures commission merchant, floor broker or associated person notifies the customer that arbitration will be demanded under the agreement. This notice must be given at the time when the futures commission merchant, floor broker or associated person notifies the customer of an intention to arbitrate. The customer must also be advised that if he or she seeks reparations under section 14 of the Act and the Commission declines to institute reparation proceedings, the claim or grievance will be subject to the preexisting arbitration agreement and must also be advised that aspects of the claims or grievances that are not subject to the reparations procedure (i. e. do not constitute a violation of the Act or rules thereunder) may be required to be submitted to the arbitration or other dispute settlement procedure set forth in the preexisting arbitration agreement."

5. See n. 2, *supra.*

aforementioned argument, the Court must find that the regulations are to be applied retroactively. However, if the regulations are applied retroactively, another subsection, 17 C.F.R. § 180.3(b)(4) (1977) would render invalid the very arbitration clause upon which defendant's motion is predicated. That subsection provides that the customer agreement must contain certain cautionary language alerting the customer that he is not required to consent to an arbitration clause in the agreement.[6] The customer agreement herein fails to contain such language. Accordingly, plaintiff urges the Court to apply the regulations retroactively and hold the arbitration clause invalid. The question, therefore, is whether the regulations, effective after the agreement was made and after the dispute between the parties arose, should be applied retroactively.

In *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 77–7192, 567 F.2d 1174 (2d Cir. 1977), *reversing* 76 Civ. 3085 (S.D. N.Y. March 21, 1977), the Court of Appeals stated that "[a] court must apply the law as it exists at the time of its decision, even where the law has changed during the pendency of the action, unless the statute or legislative history reveals an intention of prospective application only, or retroactive application would lead to 'manifest injustice' ". *Id.,* at 1177 (footnote omitted). In *Ames,* plaintiff brought suit in the District Court for the Southern District of New York alleging violations of the Commodity Exchange Act. Defendant moved to stay the action pending arbitration pursuant to a customer agreement between the parties. In reversing the district court's grant of an order to compel arbitration, the Court of Appeals found that retroactive application would not result in manifest injustice even where both the predispute agreement and the dispute itself arose *before* the effective date of the CFTC regulation. In reaching this conclusion, the appellate court considered that at the time the rules were promulgated the CFTC itself favored their retroactive application. (*Id.,* at 1178–1179)[7]; that the CFTC recognized that customer agreements are often adhesion contracts which could exclude from the market customers who objected to the arbitration provisions (*Id.,* at 1179); and that "the power of Congress [or its delegate] to abrogate an arbitration procedure previously contracted for [should be] upheld" (*Id.,* at 1181).

The Court concludes that the reasoning in *Ames* is applicable to the present case, even though in *Ames* the plaintiff sought trial in the district court notwithstanding the arbitration clause, and the plaintiff herein seeks reparations under the Commodity Exchange Act. The present situation presents even less attractive circumstances than *Ames* to validate a predispute arbitration

---

**6.** 17 C.F.R. § 180.3(b)(4) (1977) requires that the following language appear in large boldface type in the customer agreement:

"WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) RECOGNIZES THE BENEFITS OF SETTLING DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [name]. See 17 CFR 180.1–180.6.

"BY SIGNING THIS AGREEMENT, YOU MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW, BUT YOU ARE NOT WAIVING YOUR RIGHT TO ELECT AT A LATER DATE TO PROCEED PURSUANT TO SECTION 14 OF THE COMMODITY EXCHANGE ACT TO SEEK DAMAGES SUSTAINED AS A RESULT OF A VIOLATION OF THE ACT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [name] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF

YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 'REPARATIONS' PROCEEDING BEFORE THE CFTC, YOU WILL STILL HAVE 45 DAYS IN WHICH TO MAKE THAT ELECTION."

**7.** But see *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 77–7192, 567 F.2d 1174 at 1177 n. 3 (2d Cir. 1977) for a discussion of the CFTC's litigating posture that the regulations should be applied retroactively only to agreements, and not disputes, that arose before the effective date of the regulations. In the present action, the CFTC has also submitted material as *amicus curiae.* The Commission's general position here is that because of the remedial nature of the Commodity Exchange Act, the pre-dispute arbitration clause in this case should not be given precedence over the reparation procedure.

clause. The legislative history of the Commodity Exchange Act indicates that the reparation procedure was "intended as a separate remedy designed to supplement the informal 'settlement procedures' contemplated of the contract markets . . ." H.R.Rep. No. 93–975, 93d Cong., 2d Sess. 22 (1974). In addition, the rules relating to reparation proceedings, 17 C.F.R. § 12.1 et seq. (1977), provides that they "shall be construed liberally so as to secure the just, speedy and inexpensive determination of the issues presented with full protection for the rights of all parties to the proceedings envisioned by the Commodity Exchange Act, as amended." 17 C.F.R. § 12.1 (1977). Given the greater similarity of arbitration to a reparation procedure than to a trial, it appears that defendant would be less prejudiced by resort to a reparation proceeding. The Court also notes that in the reparation proceeding defendant *may* raise any claim which it has "against the complainant if it arises out of the transaction or occurrence or series of transactions or occurrences set forth in the complaint." 17 C.F.R. § 12.-23(b)(2) (1977).

Accordingly, the Court finds that the predispute arbitration clause herein is not enforceable. Given this finding, the Court cannot compel the plaintiff to arbitrate the present dispute and therefore grants plaintiff's application for a stay of the arbitration proceeding pending determination of the reparation proceeding. Defendant's requests for a stay of the reparation proceeding and to dismiss this action are therefore mooted. However, the Court notes that "neither the Commodity Futures Trading Act nor the Federal Arbitration Act authorizes the Court to grant [such a] stay . . .." *Hornblower & Weeks-Hemphill Noyes, Inc. v. Csaky*, 427 F.Supp. 814, 819 (S.D.N.Y. 1977).

■ In a manner analogous to the Federal Arbitration Act, 9 U.S.C. § 4, plaintiff has also moved the Court for an order to compel the reparation proceeding. However, the Commodity Exchange Act and the regulations promulgated thereunder pro-

vide for no such procedure. Accordingly, the Court declines to compel defendant to participate in the reparation proceeding and leaves application for such relief to the CFTC.[8]

For the foregoing reasons, defendant's motion to compel arbitration is denied and plaintiff's motion for an order in the nature of an injunction pursuant to Fed.R.Civ.P. 65 to stay arbitration pending the determination of the reparation proceeding is granted.

SO ORDERED.

---

8. See, e. g., 7 U.S.C. § 18(h) (1976) which provides that the Commission may suspend the registration of a registrant who does not obey a reparation order.